SENIOR JUSTICE POFF,
concurring in part and dissenting in part.
The majority affirms the judgment of the Court of Appeals sitting en banc, Husske v. Commonwealth, 21 Va. App. 91, 462 S.E.2d 120 (1995). Under the mandate of that judgment, the earlier judgment and mandate of a panel of that Court, Husske v. Commonwealth, 19 Va. App. 30, 448 S.E.2d 331 (1994), were “withdrawn” and “vacated”, and the judgment of the trial court was “affirmed”, 21 Va. App. at 92, 462 S.E.2d at 120.
On the Fifth Amendment self-incrimination issue, I concur with the decision of the majority to apply the rule in Minnesota v. Murphy, 465 U.S. 420 (1984). I dissent from the majority’s decision *218 upholding the denial of Husske’s request for expert assistance concerning the controversy over the reliability of forensic DNA evidence that prevailed at the time of this trial. I do not, however, advocate a per se rule applicable in every prosecution of an indigent defendant.[1]
In Ake v. Oklahoma, 470 U.S. 68 (1985), the Supreme Court, invoking the principles applied in Griffin v. Illinois, 351 U.S. 12 (1956) and in Britt v. North Carolina, 404 U.S. 226 (1971), held that the due process and equal protection clauses of the Fourteenth Amendment require a State to provide “the basic tools of an adequate defense ... to those defendants who cannot afford to pay for them.” 470 U.S. at 77. The panel of the Court of Appeals held that the rule in Ake is not limited to capital murder prosecutions or to cases involving an insanity defense. I agree. The majority of this Court does not disagree.
The Ake rule applies, however, only when the defendant makes a “threshold showing” that the assistance of an expert to confront the prosecution will be “a significant factor at trial”. 470 U.S. at 83. In satisfying that requirement, the defendant’s burden is twofold. The accused must demonstrate that the expert is required to address a critical issue and that the expert’s assistance will contribute to the formulation and perfection of a viable defense. In response to such a showing, “the State must, at a minimum, assure the defendant access to [an expert] who will . . . assist in evaluation, preparation, and presentation of the defense.” Id.
The majority of this Court holds that the Commonwealth had no such duty here because, they conclude, Husske failed to “show a particularized need and that he [would] be prejudiced by the lack of expert assistance.” My reading of the record compels the opposite conclusion.
Husske made five “threshold” motions for expert assistance. Their cumulative effect was sufficient to show the trial judge that expert knowledge was to become “a significant factor at trial.”
*219 In the first motion, counsel advised the court that “[t]he Commonwealth intends to introduce ... the evidence of DNA analysis” which he characterized as “crucial to the Commonwealth’s case.” In support of the second motion, he filed the affidavit of an adjunct counsel, a practicing attorney reputed to be the most knowledgeable member of the local bar in the area of forensic DNA application. The affiant opined that “it is impossible for a lay person to successfully challenge the DNA testing and results without the aid of an expert.” He explained that he was “concerned about the problems in testing degraded, low molecular weight forensic samples” and by “over 100 possible problem areas in the use of restrictive enzymes that could lead to an erroneous inclusion.”
In preparation for the third request for assistance, counsel filed a motion for discovery of the Commonwealth’s DNA evidence which resulted in disclosure of “all the protocols, copies of the autorads, as well as a 47-page Certificate of Analysis.” In support of the fourth and fifth motions for assistance, counsel pursued the arguments he had advanced earlier.
Renewing the motion at the conclusion of the Commonwealth’s evidence, he proffered some 400 pages of court opinions and testimony “taken in various other cases” that dramatized the nature and dimensions of the DNA dispute prevalent at that time in the scientific community[2]. A sampling of the expert testimony adduced in those cases reveals that, in the two years preceding Husske’s trial, many learned scientists had concluded that portions of the DNA testing procedure were “badly flawed,” “unreliable” and “demonstrably wrong.” And, at least one expert characterized the scientific debates as “significant and honestly-held disagreement” over the validity of testing techniques.
Clearly, the Commonwealth’s forensic DNA evidence was a critical issue because it was “a significant factor” in the identification of Husske as the criminal agent. Hence, the prevailing scientific controversy created a “particularized need” to challenge the laboratory methodology employed in the DNA analysis, the validity of the conclusions reached by the analysts, and the testimony of the Commonwealth’s expert witnesses. Knowledgeable as they were in the law, Husske’s attorneys were laymen in the science of forensic chemistry, *220 and as an indigent accused, Husske was prejudiced by his inability to obtain the expert assistance necessary to satisfy that need.
Consequently, under the facts of this case, the denial of the defense motions for expert assistance was a denial of Husske’s rights under the Fourteenth Amendment to due process and equal protection of the laws.

 Compare the facts and circumstances underlying the conclusions reached in the precedents of this Court in Stewart v. Commonwealth, 245 Va. 222, 239, 427 S.E.2d 394, 405, cert. denied, 510 U.S. 848, 114 S.Ct 143 (1993); George v. Commonwealth, 242 Va. 264, 271, 411 S.E.2d 12, 16 (1991), cert. denied, 503 U.S. 973 (1992); O’Dell v. Commonwealth, 234 Va. 672, 686, 364 S.E.2d 491, 499, cert. denied, 488 U.S. 871 (1988); Townes v. Commonwealth, 234 Va. 307, 332, 362 S.E.2d 650, 664 (1987), cert. denied, 485 U.S. 971 (1988); Pope v. Commonwealth, 234 Va. 114, 119, 360 S.E.2d 352, 356 (1987), cert. denied, 485 U.S. 1015 (1988). See also Moore v. Kemp, 809 F.2d 702, 712 n. 8 (11th Cir.), cert. denied, 481 U.S. 1054 (1987).

 Although the items proffered were excluded from evidence, they were admitted as exhibits for the record.